UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK | ) ) |
| Plaintiff, | ) ) 03:06-CV-00136-LRH-RAM ) |
| v. | ) ) ORDER |
| NORTH AMERICAN SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

Presently before the court is Defendant North American Speciality Insurance Company's ("NAS") Motion for Summary Judgment (#16[1]).  In response, Plaintiff Great American Insurance Company ("GAIC") filed an opposition and cross-motion for summary judgment (#17) to which Defendant replied (#28).

Defendant also filed a Memorandum of Points and Authorities in Opposition to Plaintiff's Cross-Motion for Summary Judgment (#42) to which Plaintiff replied (#44).  Plaintiff also filed Objections to Defendant's Evidence in Support of Its Motion for Summary Judgment (#26) to which Defendant filed a response (#30).

Defendant also filed Objections to Evidence Submitted by Plaintiff in Its Opposition to

---

[1] Refers to the court's docket number.

1  Defendant's Motion for Summary Judgment (#29).  Plaintiff filed a response and opposition to

2  Defendant's motion for summary judgment (#45).

3        Finally, Plaintiff filed a Motion for Leave to Supplement (1) Plaintiff's Opposition to

4  Defendant's Motion for Summary Judgment and (2) Plaintiff's Cross-Motion for Summary

5  Judgment (#47) to which Defendant filed a response (#49).

6  **I. Facts**

7        The following facts are not in dispute by the parties:

8        In 1998, Brunsonbuilt Construction and Development Co. ("Partnership") operated as

9  Nevada general partnership.  Its partners were Douglas Brunson and Edward McCaffery.  The

10  Partnership operated as a builder of custom homes and subdivision developer.

11        In November 1998, the Partnership began construction of a home for Marilyn Skender and

12  David Dziurda in Reno, Nevada.

13        On December 28, 1998, the Partnership executed a bill of sale in which the Partnership

14  transferred all of its "right, title, and interest in and to all tangible and intangible personal property

15  whether now known, or now or hereafter acquired, including, but not limited to . . . accounts, . . .

16  instruments, . . . documents, . . . [and] executory contracts" to Brunsonbuilt Construction and

17  Development Ltd., LLC ("LLC").  Edward McCaffery and Douglas Brunson were and continue to

18  be members and managers of the LLC.

19        On January 11, 1999, the Partnership entered into a contract with Skender and Dziurda to

20  build the home it had already started constructing.

21        On March 12, 2001, the LLC sued Skender and Dziurda in state court for not fully paying

22  the LLC for its work.

23        On December 13, 2001, Skender and Dziurda filed a third-party complaint against the

24  Partnership, Brunson, and McCaffery for deficiencies in construction of the home ("the *Skender*

25  action").  Brunson and McCaffery were sued individually and as general partners.  Plaintiff GAIC

26

1   defended the *Skender* action.

2        On July 22, 2002, Defendant NAS was notified of the claims asserted by Skender and

3   Dziruda in the *Skender* action.  NAS issued two policies to the LLC: the first policy covered

4   August 23, 2001 to August 23, 2002; and the second policy covered August 23, 2002 to August 23,

5   2003.  On August 25, 2004, NAS denied coverage for the allegations in the *Skender* action and

6   therefore asserted it had no duty to defend or indemnify the LLC.

7        In December 2002, two of the home's doors blew in during a windstorm.

8        On October 12, 2004, the Partnership prevailed on the *Skender* action at trial.

9        On November 17, 2004, GAIC demanded NAS reimburse GAIC for 50 percent of the costs

10   it incurred in defending the *Skender* action as well as any future costs.

11         On March 14, 2006, GAIC filed the present action seeking (1) a declaratory judgment that

12   NAS has a duty to defend and contribute to the *Skender* action and (2) equitable contribution for the

13   expenses GAIC incurred in defending the *Skender* action.

14        On December 28, 2006, the Nevada Supreme Court reversed the trial court that heard the

15   *Skender* action and remanded for a new trial.

16   **II. Legal Standard**

17        Summary judgment is appropriate only when "the pleadings, depositions, answers to

18   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

19   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

20   law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

21   with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

22   to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

23   587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

24        The moving party bears the burden of informing the court of the basis for its motion, along

25   with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

26

1  477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

2  must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

3  find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

4  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

5        In order to successfully rebut a motion for summary judgment, the non-moving party must

6  point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

7  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

8  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

9  242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

10  judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding

11  a material fact is considered genuine "if the evidence is such that a reasonable jury could return a

12  verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla

13  of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

14  there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

15  **III. Discussion**

16        **A.  Defendant's Duty to the LLC**

17        Defendant argues it has no duty to defend the LLC or contribute to its defense because

18  Defendant's insurance policies do not insure the LLC for the alleged construction deficiencies.

19  Defendant's policies state the following regarding its duty to defend the LLC:

20        1.  Insuring Agreement

21              a.      We will pay those sums that the insured becomes legally obligated to pay as
                        damages because of "bodily injury" and "property damage" to which this
22                      insurance applies.  We will have the right and duty to defend the insured
                        against any "suit" seeking those damages.  However, we will have no duty to
23                      defend the insured against any "suit" seeking damages for "bodily injury" or
                        "property damage" to which this insurance does not apply.
24

25  (NAS Policy #1 (#16) Ex. A at NAS01034); NAS Policy #2 (#17) Ex. B at NAS00933.)

26

4

1    The Nevada Supreme Court has stated the following with regard to an insurer's duty to

2  defend its insured:

3        There is no duty to defend "[w]here there is no *potential* for coverage."  In other words,
         "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which
4        give rise to the potential of liability under the policy."  Once the duty to defend arises,
         "this duty continues throughout the course of the litigation."  If there is any doubt about
5        whether the duty to defend arises, this doubt must be resolved in favor of the insured.
         The purpose behind construing the duty to defend so broadly is to prevent an insurer
6        from evading its obligation to provide a defense for an insured without at least
         investigating the facts behind a complaint.
7            However, "the duty to defend is not absolute."  A potential for coverage only exists
         when there is arguable or possible coverage.  Determining whether an insurer owes a
8        duty to defend is achieved by comparing the allegations of the complaint with the terms
         of the policy."

9

10 *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (footnotes omitted).

11    Defendant advances five arguments in support of its contention that it has no duty to defend

12  the LLC.

13        **1.    Who is an Insured?**

14    First, Defendant contends that the LLC and its members acting in their capacity as LLC

15  members were never named as a defendants in the *Skender* action; therefore, Defendant has no duty

16  to defend the LLC because it is not the subject of the *Skender* action.  Defendant bases this argument

17  upon the following provision of its policies:

18    Section II – Who is an Insured

19    1.  If you are designated in the Declarations as:

20    . . .

21        c.    A limited liability company, you are an insured.  Your members are also
               insureds, but only with respect to the conduct of your business.  Your
22             managers are insureds, but only with respect to their duties as your managers.

23  (NAS Policy #1 (#16) Ex. A at NAS01026); NAS Policy #2 (#17) Ex. B at NAS00941.)

24  From this provision Defendant argues that, because the third-party complaint only names the

25  Partnership, McCaffrey (as an individual and general partner), and Brunson (as an individual and

26
                                    5

1   general partner) as defendants in the *Skender* action, no duty to defend the LLC arises.

2          Plaintiff responds that the third-party complaint's naming of McCaffrey and Brunson as

3   individuals and general partners is irrelevant.  What is important, Plaintiff argues, is that the

4   individual members of the Partnership are being sued for conduct they performed as members of the

5   LLC.

6          Plaintiff's argument is well taken.  Whether McCaffrey and Brunson were sued as members

7   of the LLC or the Partnership, the fact remains that the conduct Skender and Dziurda complain of

8   arose out of McCaffrey and Brunson's actions as members of the LLC.  After the Partnership sold

9   all of its assets and contracts to the LLC, (Bill of Sale (#16) Ex. M), the LLC's members were

10  engaged in business previously held by the Partnership.[2]  That the homeowners named McCaffrey

11  and Brunson as individuals and general partners rather than members of the LLC is immaterial.  The

12  fact remains that Defendant's insurance policies cover the LLC's members with respect to the

13  conduct of the LLC's business.  That is precisely what Skender and Dziurda complain of in the

14  *Skender* action.

15          **2.      The Policy's Exclusion for Conduct of a Partnership**

16          Second, Defendant argues that its policies exclude any coverage the LLC would have for

17  conduct of a partnership, and therefore Defendant cannot be compelled to defend a suit for property

18  damage arising from the contract entered by the Partnership and for which the Partnership is sued in

19  the *Skender* action.  Defendant bases this contention on the following provision of its policies: "No

20  person or organization is an insured with respect to the conduct of any current or past partnership,

21  joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

22  (NAS Policy #1 (#16) Ex. A at NAS01027); NAS Policy #2 (#17) Ex. B at NAS00942.)

23

24          [2] The court recognizes it was the *Partnership* that entered into a contract to build the home even after
    it had transferred all of its "right, title, and interest in and to all tangible and intangible personal property" to
25  the LLC.  However, the bill of sale effecting this transfer also states that the transfer pertained to all assets
    "whether now known, or now or hereafter acquired."  Thus, even though the Partnership was the contracting
26  party, in reality, it was the LLC that promised to build, and in fact built, the home.

1    Plaintiff responds in a similar fashion to its response to Defendant's first argument by

2  noting that after the LLC acquired the Partnership's assets and contracts, construction of the home

3  then became the conduct of the LLC, not the Partnership.  Again, Plaintiff's argument is well taken.

4  The LLC constructed the home after the Partnership sold the LLC all of the Partnership's assets and

5  contracts.  That the Partnership was the contracting party does not alter the fact that the LLC actually

6  constructed the home.

7             **3.    The Scope of Defendant's Coverage**

8    Third, Defendant argues that throughout the time it was being asked to defend the *Skender*

9  action, it was presented with coverage arguments relating only to two damage allegations: (1)

10 damage caused when the home's doors blew in and (2) damage caused by leaks in the home's roof.

11 Therefore, it cannot have any obligation to defend allegations that were not presented with coverage

12 arguments.

13    Plaintiff responds that when the LLC tendered defense of the *Skender* action to Defendant,

14 the LLC provided Defendant with a copy of Skender and Dziurda's third-party complaint, which

15 lists forty alleged defects and items of property damage.

16    The court finds that Defendant has a duty to defend against all the alleged defects listed in

17 the third-party complaint that constitute "property damage" under Defendant's policies.  Whether

18 Plaintiff presented coverage arguments with respect to only two damage allegations is immaterial.

19 Defendant has a duty to defend its insured against allegations which give rise to the potential of

20 liability under the policies.  This ascertainment is achieved by comparing the allegations of the

21 complaint with the terms of the policies.  Defendant was provided with a copy of the third-party

22 complaint in connection with a request that Defendant defend the *Skender* action.  (Affidavit of Karl

23 MacGibbon (#16) at ¶ 2.)  The third-party complaint was filed on December 13, 2001, and states

24 that "[a]s of the date of filing this Third-Party Complaint, known construction defects in the

25 residence consist of: [forty separate allegations]." (Third-Party Complaint (#16) Ex. E at 6-12.)

26

1  Thus, regardless of whether Plaintiff was presented with coverage arguments for only two damage

2  allegations, Defendant has a duty to defend the LLC with regard to all the allegations in the third-

3  party complaint that constitute "property damage."

4          **4.**        **Timing of the Alleged Damage**

5          Fourth, Defendant argues it has no duty to defend against the alleged damage resulting from

6  the doors blowing in because its policies do not cover (1) damage the insured knew about before the

7  policy period began and (2) damage that is a continuation, change, or resumption of damage that

8  insured knew about before the policy period.  Defendant bases its argument on the following

9  provisions:

10        b.  This insurance applies to "bodily injury" and "property damage" only if:

11        . . .

12            (2)  The "bodily injury" or "property damage" occurs during the policy period;
13                and

14            (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II
               – Who Is An Insured and no "employee" authorized by you to give or receive
15                 notice of an "occurrence" or claim, knew that the "bodily injury" or "property
               damage" had occurred, in whole or in part.  If such a listed insured or
16                 authorized "employee" knew, prior to the policy period, that the "bodily
               injury" or "property damage" occurred, then any continuation, change or
17                 resumption of such "bodily injury" or "property damage" during or after the
               policy period will be deemed to have been known prior to the policy period.

18  (NAS Policy #1 (#16) Ex. A at NAS01034; NAS Policy #2 (#17) Ex. B at NAS00950.)

19          The court concludes Defendant has a duty to defend the LLC with regard to the

20  alleged damage resulting from the doors blowing in.  As stated above, "[i]f there is any doubt

21  about whether the duty to defend arises, this doubt must be resolved in favor of the insured. . .

22  . Determining whether an insurer owes a duty to defend is achieved by comparing the

23  allegations of the complaint with the terms of the policy."

24          Skender and Brunson alleged various contract and tort actions against the LLC based

25  on its deficient performance in constructing the home.  While the court recognizes there is

26

conflicting evidence about whether the damage caused by the doors blowing in was a continuation, change or resumption of property damage that existed before the coverage period, this controversy does not alter Defendant's duty to defend the LLC.  Defendant's duty to defend must be determined from comparing the allegations of the complaint with the terms of Defendant's policies.  Here, Skender and Brunson allege the LLC's misconduct led to damage of their home.  The home's doors blew in during December 2002, which falls into the coverage period of Defendant's second policy. (NAS Policy #2 (#17) Ex. B at NAS00871.)  As such, Defendant must defend against the alleged damage caused by this incident.

The parties also dispute when the LLC was first put on notice of the home's ceiling leaks and therefore whether Defendant has a duty to defend against allegations of damage caused by these leaks.  Defendant presents evidence that sometime after repairs began in September 2003, Skender noticed that the home's roof was leaking.  (Deposition of Marilyn Skender (#16) Ex. P at 96:25-97:9.)  Plaintiff, in response, presents evidence that Dziurda and Skender became aware the roof was leaking around the home's external fireplace on or about January 25, 2002, when Apex Roofing inspected the home.  (Deposition of David Dziurda (#19) Ex. C at 130:10-131:22; Apex Roofing Condition Report (#19) Ex. B at 1.)  Plaintiff also presents evidence that Dziurda and Skender became aware of a leak in the home's main living room in approximately September 2002, when a contractor was in the attic and noticed staining.  (Deposition of David Dziurda (#19) Ex. C at 133:21-134:4.)

Whether the leaks were in fact discovered during or after the policies' coverage period is irrelevant at this juncture.  Again, Defendant's duty to defend is determined by comparing the allegations of the complaint with the terms of Defendant's policies.  Skender and Dziurda have alleged the LLC's misconduct resulted in damages to their home.  While the parties present conflicting evidence as to whether the roof leaks were discovered before or after Defendant's coverage period, doubts as to the duty to defend must be resolved in favor of

the insured. Accordingly, Defendant must defend against the alleged damage caused by the roof leaks.

**5.   Cooperation Clause**

Fifth, Defendant argues it has no duty to defend the LLC because it failed to fulfill the following clause in its policies:

2.   Duties In the Event Of Occurrence, Offense, Claim Or Suit

. . .

    c.      You and any other involved insured must:

. . .

          (3)      Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

(NAS Policy #1 (#16) Ex. A at NAS01028); (#17) Ex. B, NAS Policy # 2 at NAS00942-43.)

Defendant argues the LLC breached this provision by not providing Defendant with the bill of sale, which sold the Partnership's assets to the LLC, after Defendant sent a letter to the LLC asking for documents supporting the position Defendant had a duty to defend the *Skender* action.  Plaintiff responds that Karl MacGibbon, Defendant's person most knowledgeable, testified that Defendant was not contending that it had not received enough documentation to determine coverage.  (Deposition on Karl R. MacGibbon (#25) Ex. C at 146:10-147:14.)  The court concludes that this conflicting evidence is not sufficient to compel a finding that Plaintiff breached the cooperation clause as a matter of law.

**B.  Defendant's Duty to Contribute Money to the LLC's Defense**

Plaintiff also moves this court for summary judgment on its claim that Defendant must contribute to past defense costs.  In response, Defendant points out that Plaintiff has not submitted any expenses that it incurred to defend the *Skender* action.  Therefore, it has not shown what contribution it is entitled to as a matter of law.

10

1    The court agrees Plaintiff has not presented evidence showing what expenses it is

2    entitled to as a matter of law.  However, this lack of evidence does not affect this court's

3    ability to find Defendant is liable for the expenses it should have contributed to the *Skender*

4    action.  *See* Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered

5    on liability alone, even if there is a genuine issue on the amount of damages."); *see also*

6    *Thoresen v. Lumbermens Mut. Casualty Co.*, 351 F.2d 573 (7th Cir. 1965) (affirming a grant

7    of partial summary judgment against an insurer, which the trial court found liable for legal

8    expenses it should have incurred to defend its insured, although the amount of these expenses

9    was not initially adjudicated).

10    Nevada has not addressed the duty of an insurer to contribute to an insured's defense

11    by another insurer.  Therefore, this court must predict how the Nevada Supreme Court would

12    decide this issue "using intermediate appellate court decisions, decisions from other

13    jurisdictions, statutes, treatises, and restatements as guidance."  *Arizona Elec. Power Co-op v.*

14    *Berkely*, 59 F.3d 988, 991 (9th Cir. 1995).  The Nevada Supreme Court has often turned to

15    California decisions when faced with issues of first impression.  *See, e.g.*, *Volvo Cars of North*

16    *America, Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006); *Cheung v. Eighth Judicial Dist.*

17    *Court*, 124 P.3d 550, 559 (Nev. 2005).  Accordingly, this court will also turn to California law

18    in this case.

19    As a general rule, an insured's loss should be "equitably distributed among those who

20    share liability for it in direct ratio to the portion each insurer's coverage bears to the total

21    coverage provided by all the insurance policies."  *Fireman's Fund Ins. Co. v. Md. Casualty*

22    *Co.*, 65 Cal. App. 4th 1279, 1294 n.4 (1998).  However, because the parties have not briefed

23    the amount and type of coverage their policies provide,  the court cannot find the proportion of

24    Plaintiff's expenses Defendant must contribute as a matter of law.  Therefore, this issue

25    remains for trial.

26

11

**C.  Plaintiff's Objections to Defendant's Evidence**

Plaintiff has objected to the depositions Defendant has offered in support of its motion for summary judgment, arguing that Defendant has not complied with the authentication requirements of Federal Rules of Civil Procedure Rule 56(e).  Defendant has not fulfilled the authentication requirements of Rule 56(e), which would normally require attaching the deposition's cover page and the reporter's certification.  *See Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir. 2002).  However, because Plaintiff has not attacked the content of these depositions and apparently produced the same transcripts to Defendant, the court will nonetheless consider them under the assumption that if they were somehow inaccurate, Plaintiff would have brought any discrepancies to the court's attention.  Still, the court warns counsel for Defendant that failure to comply with the authentication requirements of 56(e) can result in this court not considering the proffered documents.

**D.  Defendant's Objections to Plaintiff Evidence**

Defendant objects, on several grounds, to portions of Karl MacGibbon's deposition, a letter from Stephen Castranova to Ralph Rowland, and the handwritten notes in a letter to the State Contractor's Board.  Because the court did not consider this evidence in deciding the present motions for summary judgment, the court will not rule on Defendant's objections at this time.

**E.  Plaintiff Motion for Leave to Supplement**

Plaintiff has also filed a motion to supplement its opposition to Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment.   Because the new evidence presented by Plaintiff in its motion does not affect the court's disposition of Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment, Plaintiff's motion for leave to supplement is denied as moot.

///

**III.    Conclusion**

Defendant has failed to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Plaintiff, however, has succeeded in showing it is entitled to partial summary judgment on multiple issues. Accordingly, pursuant its authority under Federal Rules of Procedure Rule 56(d), the court finds that the following facts are not genuinely at issue and are therefore established in this action: (1) Brunson and McCaffrey are insureds of Defendant with respect to their conduct in constructing Skender and Dziurda's home, (2) the policies' exclusion for conduct of a partnership does not exclude coverage for the LLC in constructing Skender and Dziurda's home, and (3) Defendant has a duty to defend the LLC with regard to the allegations in the third-party complaint that constitute "property damage" under Defendant's policies, (4) Defendant has a duty to defend against the alleged damage caused by the home's roof leaks, (5) Defendant has a duty to defend against the alleged damage caused by the home's doors blowing in, and (6) Defendant is liable for a portion of the expenses Plaintiff incurred in defending the *Skender* action.

///
///
///
///
///
///
///
///
///
///
///

13

1    IT IS THEREFORE ORDERED that Defendant North American Specialty

2  Insurance's Motion for Summary Judgment (#16) is DENIED.

3    IT IS FURTHER ORDERED that Plaintiff Great American Insurance Company's

4  Cross-Motion for Summary Judgment (#17) is GRANTED in part as explained above.

5    IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Supplement (1)

6  Plaintiff's Opposition to Defendant's Motion for Summary Judgment and (2) Plaintiff's

7  Cross-Motion for Summary Judgment (#47) is DENIED as moot.

8    IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial

9  order within thirty (30) days from entry of this Order. *See* Local Rules 16-4 and 26-1(e)(5).

10   IT IS SO ORDERED.

11   DATED this 12th day of February, 2008.

12

13

14                                    _____

15                                    LARRY R. HICKS
                                      UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

                                      14